UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

SUSAN HARTMAN and,
BRANDON CURTIS,

       Plaintiffs,                              CASE NO.:

vs.

WJD INVESTMENTS OF FLORIDA LLC,
a Florida Limited Liability Company,
d/b/a GOLD MINE ARCADE

Defendant.
_____/

## COMPLAINT

COMES NOW the Plaintiffs, SUSAN HARTMAN (hereinafter "MS. HARTMAN") and BRANDON CURTIS (hereinafter "MR. CURTIS"), by and through their undersigned counsel, sue the Defendant, WJD INVESTMENTS OF FLORIDA LLC, a Florida Limited Liability Company, d/b/a GOLD MINE ARCADE (hereinafter "WJD INVESTMENTS") and allege the following:

### JURISDICTION AND VENUE

1. This is a civil action alleging violations of the Fair Labor Standards Act.

2. This Court is vested with federal question jurisdiction over Plaintiffs' claims arising under the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201 et seq., pursuant to 28 U.S.C. § 1311 and 29 U.S.C. § 216(b).

3. Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(b), because all actions giving rise to this claim arose in the Judicial Circuit.

## PARTIES

4. At all times material hereto, WJD INVESTMENTS is a Florida Limited Liability Company organized and existing under the laws of the State of Florida and duly authorized and licensed to do business in Palm Beach County, Florida and, at all times material, was an enterprise engaged in commerce within the meaning of 29 U.S.C. 203(s)(1). WJD INVESTMENTS was MS. HARTMAN's and MR. CURTIS' "employer" as defined by the FLSA.

5. WJD INVESTMENTS is the owner and operator of Gold Mine Arcade, wherein it offers video games and coin-operated machines to be played by its customers throughout its locations in Palm Beach County.

6. At all times material hereto, MS. HARTMAN was, and is, a resident of Palm Beach County, Florida, and was an "employee" of WJD INVESTMENTS as defined by the FLSA.

7. Additionally, MR. CURTIS was, and is, a resident of Palm Beach County, Florida, and was an "employee" of WJD INVESTMENTS as defined by the FLSA.

8. Venue is proper in the Southern District of Florida because it is in the district in which a substantial part of the events giving rise to the claims occurred. In addition, it is a district in which WJD INVESTMENTS resides within the meaning of 28 U.S.C. 1391(c).

9. All conditions precedent to the bringing of the claims asserted herein have occurred.

## GENERAL ALLEGATIONS

**As to SUSAN HARTMAN:**

10. MS. HARTMAN was employed as a cashier by WJD INVESTMENTS from March of 2018 to September of 2021.

11. At all times material hereto, the employer, WJD INVESTMENTS acted in the interests of the employer, specifically, WJD INVESTMENTS within the meaning of 29 U.S.C. 203(d). Therefore, WJD INVESTMENTS is liable as an employer.

12. WJD INVESTMENTS classified MS. HARTMAN as an employee while she worked with the company.

13. MS. HARTMAN's rate of pay at WJD INVESTMENTS at the beginning of her employment in 2018 was $10.00 an hour. In 2019, she then received a pay raise to $13.00 per hour until her ultimate final hourly rate of $14.00 in 2020 and up until her termination in September of 2021.

14. MS. HARTMAN's normal work schedule consisted of Tuesdays, Wednesdays, Fridays, and Saturdays; however, remained on call on Sundays, Mondays, Thursdays, as well as Fridays and Saturdays during the times she was not working. Her Tuesday and Wednesday schedules consisted of twelve (12) hour workdays, nine (9) hour workdays on Fridays and eight (8) hour workdays on Saturdays. Accordingly, MS. HARTMAN would work at least forty-one (41) hour weeks; however, she constantly was called in during off days to step in as cashier for WJD INVESTMENTS requiring her to work multiple overtime hours without proper compensation.

15. Resultingly, during her employment, MS. HARTMAN was consistently working an excess of forty (40) hours per week. During her time with WJD INVESTMENTS, she was not paid time and a half for those hours worked in excess of forty (40) hours per week as required by 29 U.S.C. 207.

16. Specifically, during her employment with WJD INVESTMENTS, MS. HARTMAN would work approximately five (5) additional hours a week on average atop of her

normal forty (40) hours according to the limited paystubs provided from 2020 to 2021. As a result, at all times relevant, MS. HARTMAN was expected to work at minimum, an average of five (5) overtime hours a week during her employment with WJD INVESTMENTS from 2019 to the date of her termination.  A breakdown of the calculated overtime hours worked using the available paystubs that Ms. Hartman has in her possession is attached hereto as *Exhibit A.*

17. From 2019 to 2020 and at all times relevant, MS. HARTMAN, was being paid a rate of $13.00 an hour with an average of five (5) hours a week of overtime. During the course of the year, MS. HARTMAN accumulated two-hundred sixty (260) hours of overtime that she was improperly compensated for. Instead of her entitled hourly pay of $19.50 per overtime hour worked, WJD INVESTMENTS was incorrectly paying her the standard hourly rate of $13.00.

18. As a result, for the year of 2019, MS. HARTMAN was owed an additional $32.50 per week for her lost overtime pay during the fifty-two (52) week period. As such, MS. HARTMAN is entitled to **$1,690.00** for the year 2019.

19. Additionally, for the year of 2020, MS. HARTMAN was given a raise from $13.00 to $14.00 an hour and continued to work an estimated five (5) overtime hours a week. During the span of the year, MS. HARTMAN worked a total of two-hundred sixty (260) hours of overtime once again. During this time, she was entitled to an hourly pay of $21.00 per overtime hour as her normal rate was $14.00 an hour.

20. As such, for the year of 2020, MS. HARTMAN was owed an additional $35.00 a week of unpaid overtime by WJD INVESTMENTS across the fifty-two (52) week period. As a result, MS. HARTMAN is owed a total of **$1,820.00** of lost overtime for the year of 2020.

21. From January 2021 to November 2021, MS. HARTMAN worked approximately two hundred and fifteen (215) overtime hours spanning across the forty-three (43) weeks leading

up to her termination. During this time, she was paid a straight $14.00 per hour instead of the correct overtime pay of $21.00 per overtime hour.

22. Accordingly, during MS. HARTMAN's employment with WJD INVESTMENTS during 2021, up until her termination, MS. HARTMAN was owed an additional $35.00 a week of unpaid overtime for a span of forty-three (43) weeks, resulting in **$1,575.00** of lost overtime pay.

23. The total amount due and owing to MS. HARTMAN for all her time employed by WJD INVESTMENTS from 2019 to 2021 is **$5,085.00**, which is subjected to change as MS. HARTMAN engages in the discovery process and obtains her full paystubs for the entire duration of her employment, plus liquidated damages of an equal amount, namely **$5,085.00**.

**As to BRANDON CURTIS:**

24. MR. CURTIS was employed as a cashier with WJD INVESTMENTS from July 2018 to September 2021.

25. WJD INVESTMENTS classified MR. CURTIS as an employee while he worked with the company.

26. At all times material hereto, the employer, WJD INVESTMENTS acted in the interests of the employer, specifically, WJD INVESTMENTS within the meaning of 29 U.S.C. 203(d). Therefore, WJD INVESTMENTS is liable as an employer.

27. MR. CURTIS' original rate of pay began at $10.00 an hour at the time of his hire in July of 2018; however, WJD INVESTMENTS soon raised his rate to $11.00 an hour in the year of 2019. At all times relevant, MR. CURTIS was receiving pay at a rate of $11.00 an hour from 2019 to the date of his termination.

28. Additionally, MR. CURTIS' normal work week consisted of a normal Sunday, Monday, Thursday, Friday, and Saturday schedule. At all times relevant, MR. CURTIS worked for WJD INVESTMENTS for over twelve (12) hours a day on Sundays, Mondays, and Thursdays, as well as six (6) hours a day on Fridays and eight (8) hours a day on Saturdays. Accordingly, MR. CURTIS would work an approximate fifty (50) hours a week for WJD INVESTMENTS. During his time with WJD INVESTMENTS, he was not paid time and a half for those hours worked in excess of forty (40) hours per week as required by 29 U.S.C. 207.

29. Notwithstanding, MR. CURTIS' limited 2020 and 2021 paystubs accurately reflect an approximate average of eight (8) hours a week of overtime during his employment with WJD INVESTMENTS. As a result, at all times relevant, MR. CURTIS was expected to work at minimum, an average of eight (8) overtime hours a week during his employment with WJD INVESTMENTS from 2019 to the date of his termination. A breakdown of the calculated overtime hours worked is attached hereto as ***Exhibit B.***

30. Accordingly, for the years 2019 and 2020, MR. CURTIS, worked approximately four hundred and sixteen (416) overtime hours each year, or eight hundred and thirty-two (832) for the years of 2019 and 2020. During this time and at all times relevant, MR. CURTIS was paid at an hourly rate of $11.00. However, WJD INVESTMENTS paid MR. CURTIS his regular hourly rate of $11.00 per hour instead of his entitled overtime rate of $16.50 per hour resulting in unpaid overtime hours not adequately compensated for by WJD INVESTMENTS.

31. Specifically, for the years 2019 and 2020, MR. CURTIS was owed an additional $44.00 a week of unpaid overtime over the course of the one hundred and four (104) weeks, resulting in **$4,576.00** total of lost overtime pay for the year of 2019 and 2020.

32. From January 2021 to November 2021, the time of his termination, MR. CURTIS, with a rate of pay of $11.00 per hour and an average of eight (8) hours a week of overtime, worked approximately three hundred and forty-four (344) overtime hours spanning across the forty-three (43) week period. During this time, he was paid a straight $11.00 per hour instead of his entitled overtime pay of $16.50 per overtime hour.

33. As a result, during MR. CURTIS' employment with WJD INVESMENTS during the 2021 fiscal year, MR. CURTIS was owed an additional $44.00 a week of unpaid overtime for a span of forty-three (43) weeks, resulting in **$1,892.00** of lost overtime pay.

34. The total amount due and owing to MR. CURTIS for all his time employed by WJD INVESTMENTS from 2019 to 2021 is **$6,468.00** which is subjected to change as MR. CURTIS engages in the discovery process and obtains his full paystubs for the entire duration of his employment, plus liquidated damages of an equal amount, namely **$6,468.00**, plus liquidated damages.

**As to both HARTMAN and CURTIS**

35. As a direct and proximate result of the conduct described above, MS. HARTMAN and MR. CURTIS have been damaged. WJD INVESTMENTS failed to pay, or otherwise withheld from, Plaintiffs their full and proper compensation for the overtime hours they worked from 2019 to 2021.

36. WJD INVESTMENTS knew or otherwise, should have known, that it was unlawful to refuse to pay MS. HARTMAN and MR. CURTIS their legally entitled overtime wages.

37. WJD INVESTMENTS have knowingly and willfully refused to pay MS. HARTMAN and MR. CURTIS their legally entitled overtime wages.

38. MS. HARTMAN and MR. CURTIS have complied with all conditions precedent to bringing this suit, or same have been waived or abandoned.

39. MS. HARTMAN and MR. CURTIS have been required to retain the undersigned counsel to represent them in this action and are obligated to pay a reasonable fee for service rendered.

**COUNT I – VIOLATION OF FAIR LABOR STANDARDS ("FLSA")**
(as to Susan Hartman)

40. Plaintiff SUSAN HARTMAN realleges and incorporates the allegations in paragraphs 1 through 6, 8, 9, 10 through 23, and 35 through 39 above as if fully set forth herein.

41. MS. HARTMAN brings forth this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and alleges that she is entitled to the following: (a) overtime wages as listed above, and (b) liquidated damages.

42. At all relevant times, WJD INVESTMENTS employed MS. HARTMAN within the meaning of the FLSA.

43. Under the Fair Labor Standards Act, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

44. "Any employer who violates the provisions of Section 207 [of the Fair Labor Standards Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

45. During MS. HARTMAN'S employment with WJD INVESTMENTS, at all times relevant to this action, MS. HARTMAN regularly worked overtime hours but was not adequately paid her time and a half compensation for same.

46. MS. HARTMAN is entitled to be paid time and one-half of her regular rate of pay for each hour worked in excess of a forty (40) hour work week.

47. WJD INVESTMENTS' failure to pay MS. HARTMAN overtime compensation at a rate less than one and one-half times the rate at which she was employed for work performed beyond the forty (40) hour workweek is in violation of the FLSA, in particular 29 U.S.C. §§ 206 and 207.

48. MS. HARTMAN brings forth this action pursuant to the Fair Labor Standards Act 29 U.S.C. §§ 201 et seq. and alleges that she is entitled to the following: (a) the maximum amount of unpaid overtime wages allowable under the FLSA, and (b) liquidated damages.

49. Notwithstanding, due to WJD INVESTMENTS violations, MS. HARTMAN seeks recovery of damages as referenced above and further seeks interest, costs, and attorney's fees, pursuant to 29 U.S.C. §216(b).

## COUNT II – VIOLATION OF FAIR LABOR STANDARDS ("FLSA")
### (as to Brandon Curtis)

50. Plaintiff, BRANDON CURTIS, realleges and incorporates the allegations set forth in paragraphs 1 through 5, 7 through 9, and 24 through 39, above as if set forth herein in full.

51. MR. CURTIS brings forth this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and alleges that he is entitled to the following: (a) overtime wages as listed above, and (b) liquidated damages.

52. At all relevant times, WJD INVESTMENTS employed MR. CURTIS within the meaning of the FLSA.

53. Under the Fair Labor Standards Act, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

54. "Any employer who violates the provisions of Section 207 [of the Fair Labor Standards Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

55. During MR. CURTIS' employment with WJD INVESTMENTS, at all times relevant to this action, MR. CURTIS regularly worked overtime hours but was not adequately paid his time and a half compensation for same.

56. MR. CURTIS is entitled to be paid time and one-half of his regular rate of pay for each hour worked in excess of a forty (40) hour work week.

57. WJD INVESTMENTS' failure to pay MR. CURTIS overtime compensation at a rate less than one and one-half times the rate at which he was employed for work performed beyond the forty (40) hour workweek is in violation of the FLSA, in particular 29 U.S.C. §§ 206 and 207.

58. MR. CURTIS brings forth this action pursuant to the Fair Labor Standards Act 29 U.S.C. §§ 201 et seq. and alleges that he is entitled to the following: (a) the maximum amount of unpaid overtime wages allowable under the FLSA, and (b) liquidated damages.

59. Notwithstanding, due to WJD INVESTMENTS violations, MR. CURTIS seeks recovery of damages as referenced above and further seeks interest, costs, and attorney's fees, pursuant to 29 U.S.C. §216(b).

## JURY TRIAL DEMAND

Plaintiffs, SUSAN HARTMAN, and BRANDON CURTIS, demand a trial by jury on all issues so triable.

Dated January 27, 2022.

Respectfully submitted,

**SCONZO LAW OFFICE, P.A.**
3825 PGA Blvd, Suite 207
Palm Beach Gardens, Florida 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
SAMANTHA L. SIMPSON, ESQUIRE
Florida Bar No.: 1010423
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** samantha@sconzolawoffice.com
**Secondary Email:** natalia@sconzolawoffice.com